FILED UNDER SEAL

FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

2025 SEP -3 P 1: 26

| | |
|---|---|
| Xu'e Chen,<br><br>    Plaintiff,<br><br>    v.<br><br>yangjiangshiliangyilikejiyouxiangongsi<br>    and<br>yangjiangshishuanglierenkejiyouxiangongsi<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 8:25cv-703 |

## VERIFIED COMPLAINT

Plaintiff Xu'e Chen ("Plaintiff") alleges as follows:

### NATURE OF THIS ACTION

1.　　This is an action ("Action") for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.　　Plaintiff brings this Action for infringement of one or more claims of U.S. Design Patent Nos. D1,056,611 ("the 'D611 Patent") and D1,080,289 ("the 'D289 Patent") (collectively the "Asserted Patents"), both of which are entitled "Meat Grinder." True and correct copies of the 'D611 Patent and 'D289 Patent are as Exhibits A and B, respectively.

### THE PARTIES

3.　　Plaintiff is an individual residing in Guandong, China.

4.　　Plaintiff is the inventor and sole owner of the Asserted Patents.

5.　　Plaintiff has the exclusive right to license, enforce, and collect all past damages for infringement of the Asserted Patents.

6.　　Plaintiff has standing to sue for infringement of the Asserted Patents.

FILED UNDER SEAL

7.     Plaintiff sells products covered by the Asserted Patents ("Plaintiff's Covered Products") through her webstores hosted on the Amazon.com retail platform ("Amazon Retail Platform") to consumers in the United States, including consumers in the Commonwealth of Virginia ("Virginia").

8.     Defendant yangjiangshiliangyilikejiyouxiangongsi ("the 'Q49 Defendant") sells under the webstore name HD KITCHEN on the Amazon Retail Platform and uses Amazon Seller ID A13C232M8ROQ49. The 'Q49 Defendant is believed to a company, entity, or business association which, on information and belief, resides in China.

9.     Defendant yangjiangshishuanglierenkejiyouxiangongsi ("the '4ND Defendant") sells under the webstore name HUNTER.DUAL-DE on the Amazon Retail Platform and uses Amazon Seller ID A1QGJSFW7KS4ND. The '4ND Defendant is believed to a company, entity, or business associations which, on information and belief, resides in China.

10.     On information and belief, 'Q49 Defendant and the '4ND Defendant (collectively "Defendants") may, intentionally or otherwise, conceal their identities and the full scope of their infringing operations to thwart patent owners, such as Plaintiff, from learning Defendants' true identities and the exact interworking of Defendants' infringing activities.

11.     On information and belief, the Amazon Retail Platform does not require the true names and contact information of sellers to be posted publicly, and sellers may set up accounts using fictitious names. Accordingly, the public seller names used on online retail stores are unreliable. The true names and identities of the Defendants are currently unknown. The names "yangjiangshiliangyilikejiyouxiangongsi" and "yangjiangshishuanglierenkejiyouxiangongsi" of Defendants are listed respectively as the "Business Name" for the seller Amazon Retail Platform. On information and belief, neither name is an identifiable business name. On information and

2

belief, many sellers on the Amazon Retail Platform use multiple fictitious names and addresses to regularly create new stores at least on the Amazon.com platform. On information and belief, this is a common practice on the Amazon Retail Platform to enable sellers to evade enforcement efforts.

12.     On information and belief, the Defendants are commonly controlled by the same entity or entities, affiliates of the same entity or entities, affiliates of each other, controlled by the same entity or entities, or one of the Defendants is an alter ego of the other Defendant (or vice versa). For instance, both Defendants list the same email address (HUNTER1950@yeah.net) on their Accused Webstores. On information and belief, the letters "HD" in "HD-KITCHEN" correspond to an acronym for "HUNTER.DUAL." As set forth below, both Defendants sell the same two products using the same Amazon Seller Identification Numbers ("ASIN").

13.     Defendants sell products that infringe one or more of the Asserted Patents ("Accused Products") on the Amazon Retail Platform to consumers in the United States and in Virginia through interstate commerce. Defendants conduct their operations through their HD-KITCHEN and HUNTER.DUAL-DE webstores (collectively "Accused Webstores") hosted on the Amazon Retail Platform.

14.     Defendants' Accused Products are in direct competition with Plaintiff's Covered Products.

15.     Defendants target consumers in the United States, including Virginia residents, and have offered to sell and, on information and belief, have sold and continue to sell Accused Products that practice the claims of the Asserted Patents to consumers within the United States, including within Virginia and the United States District Court for the Eastern District of Virginia ("District"). For example, residents of the District may purchase the Accused Products using their Amazon

Prime memberships and have the Accused Products delivered by an Amazon Prime delivery vehicle in this District.

16. Through their operation of the Accused Webstores, Defendants engage in the importation, offer for sale, and sale of Accused Products.

## JURISDICTION AND VENUE

17. Plaintiff's claims for patent infringement against Defendant arise under the patent laws of the United States including 35 U.S.C. §§ 271 and 281.

18. This Court has original and exclusive subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19. This Court has personal jurisdiction over Defendants because they have supplied their products into commerce in the United States and this District and pursuant to the Federal Long Arm Rule, Fed. R. Civ. P. 4(k)(2).

20. This Court has personal jurisdiction over Defendants pursuant to Va. Code Ann.§ 8.01-328.1 (1950). Personal jurisdiction exists over Defendants because they have minimum contacts with Virginia as a result of business regularly conducted within Virginia and within this District, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Virginia and this District. This Court has personal jurisdiction over Defendants, in part, because Defendants do continuous and systematic business in Virginia including by providing Accused Products and services to the residents Virginia through fully interactive Accused Websites that allow Accused Products to be purchased by Virginia residents and shipped to addresses in Virginia. Defendants knew the Accused Products would be used within Virginia, and have solicited business from the residents of Virginia using the Amazon Retail Platform.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because the Defendants reside outside the United States and because they are subject to personal jurisdiction.

22.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

## PLAINTIFF'S BACKGROUND

23.     Plaintiff owns and operates a trading company located in Guangdong, China that specializes in kitchen tools. Plaintiff's company outsources its production to experienced and qualified original equipment manufacturing (OEM) suppliers.

24.     Plaintiff's company focuses on creative product design, functional development, and quality control. In addition to Plaintiff's Covered Products, Plaintiff's company also independently develops and sells a variety of other products, including refrigerator storage racks and multi-functional kitchen storage supplies. Despite being a relatively-small company, Plaintiff's company adheres to its design principles and strives to continuously improve and innovate its products. Plaintiff has applied for and obtained multiple patents to protect her company's products.

25.     Plaintiff's Covered Products are the result of Plaintiff's company's significant investment of funds and effort to develop Plaintiff's Covered Products, including performing in-depth market research, designing the Plaintiff's Covered Products' appearance and functionality, refining its technology to address customer feedback, creating multiple sets of plastic-injection molds, conducting repeated proofing tests using these plastic-injection molds, and optimizing the structure and material selection. During the production process, Plaintiff's company rigorously managed the design process to ensure that Plaintiff's Covered Products met expectations for durability, safety, and user experience.

26.     Plaintiff's Covered Products are meat grinders with aspects advantageous to consumers including (i) an inner shred structure and strong anti-slip strip; (ii) built-in plastic teeth that cover the whole area which can tightly clamp the food; (iii) a lid has extra spikes on the edge, which help meat gather the shredded meat in the middle, cutting it evenly; and (iv) construction from high-quality food grade material, BPA free and heat resistance.

27.     Out of consideration for aesthetics, Plaintiff created multiple attractive designs that include one or more of the following: an approximate flower-like shape (when viewed in the planform view) that consists of a continuous, undulating curve around the perimeter of the rim of the base, a flange that extends in the outward radial direction with extending portions forming petal-like lobes, two or more raised areas on the lobes where the raised areas are running in a circumferential direction and are approximately parallel to each other, two approximately circular handles diametrically opposed to each other near the edge of the cover and extending vertically, indentations on the perimeter of the handles, and a relatively flat top of the cover ("Design Elements"). The Plaintiff believed that consumers could recognize and remember its designs as unique for a meat shredder by providing a visually pleasing appearance. The Plaintiff selected the Design Elements from infinite designs. For instance, she cleverly integrated the base with the roughly flower-like shape (when viewed in the planform view) into the functional features of the meat shredder, which stands out to consumers among the many designs for meat shredders. This type of product has high memory points and recognition by consumers. For example, after browsing the product, a consumer can quickly remember this meat shredder design because of its unique design and shape. The patented meat shredder has a simple and elegant appearance, full of beauty, and facilitates the shredding of meat by consumers.

28.     To protect Plaintiff's Covered Products, Plaintiff filed patent applications in the United States Patent and Trademark Office that led to the issuance of the Asserted Patents. Plaintiff's Covered Products are covered by the claims of the Asserted Patents and are commercial embodiments of the Asserted Patents.

29.     Plaintiff's company initially sold Plaintiff's Covered Products in the United States on the Amazon Retail Platform through her webstores. Since their first sale, Plaintiff's Covered Products have received positive customer reviews and received significant orders, with sales steadily increasing. Plaintiff's Covered Products quickly gained market acceptance becoming a favorite among consumers in Europe and the United States on the Amazon Retail Platform. Plaintiff's Covered Products have captured a significant market share in their category, and their brand awareness continues to grow. Among the purchasing public, Plaintiff's Covered Products are recognizable as such and are known for their distinctive design. This design is well recognized by consumers.

30.     Plaintiff's Covered Products are one of Plaintiff's company's core products. Plaintiff's Covered Products have accumulated a large number of positive reviews on the Amazon Retail Platform. Plaintiff's Covered Products have maintained a high ranking in the search results of multiple core keywords. Although Plaintiff's company also deal in other kitchen products, the sales and profits of Plaintiff's Covered Products account for a large proportion of the Plaintiff's company's overall business, which plays a key role in the company's business development.

31.     Plaintiff and her company invest in advertising on Amazon, including Sponsored Ads, Store operations, and Amazon Delivery Service Partner ads to drive traffic. At the same time, Plaintiff and her company promote Plaintiff's Covered Products through social media platforms such as Facebook and Instagram, and encourage influencers to showcase and recommend products.

In addition, multiple kitchen utensil blogs have spontaneously introduced and recommended Plaintiff's Covered Products. On information and belief, this reflects the influence of the Plaintiff's Covered Products in the United States and has helped attract more potential customers.

32.     Since launching Plaintiff's Covered Products, Plaintiff and her company identified a number of counterfeit products on the Amazon Retail Platform, including the Accused Products. As the sales of Accused Products continued to increase, Plaintiff's Covered Products' product ranking and sales on the Amazon Retail Platform have declined significantly, and the Plaintiff's company has had to deal with excess inventory. Because of this decline in sales, earlier this year, Plaintiff's company had to move some of its inventory of Plaintiff's Covered Products to third-party overseas warehouses to reduce Amazon storage fees. Plaintiff and her company were also forced to lower prices of Plaintiff's Covered Products to remain competitive. The additional overseas warehousing expenses and reduced prices have led to significant reductions in the overall store profit margin and also eroded Plaintiff's company customer base. On information and belief, Defendants have flooded the online market and have irreparably damaged, and are continuing to irreparably damage, Plaintiff.

33.     Plaintiff's company maintains quality control standards for Plaintiff's Covered Products. Plaintiff's Covered Products are only sold directly by Plaintiff to consumers through Plaintiff's company's webstores on the Amazon Retail Platform. Prior to the flood of Accused Products entering the US market, sales of Plaintiff's Covered Products via her company's webstores represented a significant portion of Plaintiff's business.

34.     Plaintiff and her company have filed intellectual property violation reports with the Amazon Retail Platform, and also sent infringement warning emails to sellers who were infringing, clearly informing them of the Asserted Patents and the fact that they were infringing. Some of the

8

sellers that Plaintiff contacted did not stop their sales, but continued to expand their sales, causing continuous and aggravated damage to Plaintiff's company's business. For other sellers that agreed to stop selling, some of these sellers, on information and belief, have created new webstores on the Amazon Retail Platform using different webstore names and under a false or fictious seller name. Based on these prior dealings and on information and belief, Defendants will engage in identical and/or similar tactics if Defendants learn of this Action before being enjoined.

## THE ACCUSED PRODUCTS

35.     Defendant have infringed the claims of the Asserted Patents through the manufacture, sale, offer for sale, advertisement, importation, shipment, distribution, and/or use of Accused Products.

36.     On information and belief, the Accused Products are manufactured by Defendants in China. On information and belief, Defendants have profited, and are profiting, from the sales of Accused Products. On information and belief, Defendants in this case hold most of their monetary assets in offshore accounts. Defendants are selling their Accused Products on the Amazon Retail Platform at a fraction of the price that the Plaintiff's company initially charged for Plaintiff's Covered Products.

37.     As presently advised, the Accused Products include, but are not limited to, the following meat shredders: Chicken Shredder Tool Twist for Kitchen, Manual Chicken Breast Grinder Machine for Ground Food, Meat & Vegetables (Elegant Black) (ASIN B0CWXQL27W) and Chicken Shredder Tool Twist for Kitchen, Manual Chicken Breast Grinder Machine for Ground Food, Meat & Vegetables, Elegant Red (ASIN B0CWXTTBMF).

38.     The 'Q49 Defendant sells and has sold Accused Products including ASIN B0CWXQL27W and ASIN B0CWXTTBMF.

39.     The '4ND Defendant sells and has sold ASIN B0CWXQL27W and ASIN B0CWXTTBMF.

40.     The Accused Products are available for purchase on the following URLs on the Amazon Retail Platform: https://www.amazon.com/Hundop-Chicken-Shredder-Visible-Vegetables/dp/B0CWXTTBMF; https://www.amazon.com/Hundop-Chicken-Shredder-Visible-Vegetables/dp/B0CWXQL27W; https://www.amazon.com/Hundop-Chicken-Shredder-Visible-Vegetables/dp/B0CWXQL27W/ref=sr_1_1?dib=eyJ2IjoiMSJ9.hEy8ZWeMEUbEIWdjAZz5Cu Qd8TAAdFzdXLcm46fvlGQVM6wpyhCuik9kWIE40enfyAXCXbhFlO4y87W6KywW6UErerh fl_tnDnN21TsCYcPQGo91QsO31AIpYrAhNvHXly0yzHnadv-xP0pnprJXb-8NOlyzUiKJ3-z1s1SEqGw.PIF1q6BOJvt2xTxXO7GEDpns_ZM0tofnOyuv_it9eXM&dib_tag=se&m=A1QGJ SFW7KS4ND&marketplaceID=ATVPDKIKX0DER&qid=1754902091&s=merchant-items&sr=1-1&th=1;     and     https://www.amazon.com/Hundop-Chicken-Shredder-Visible-Vegetables/dp/B0CWXTTBMF/ref=sr_1_1?dib=eyJ2IjoiMSJ9.hEy8ZWeMEUbEIWdjAZz5Cu Qd8TAAdFzdXLcm46fvlGQVM6wpyhCuik9kWIE40enfyAXCXbhFlO4y87W6KywW6UErerh fl_tnDnN21TsCYcPQGo91QsO31AIpYrAhNvHXly0yzHnadv-xP0pnprJXb-8NOlyzUiKJ3-z1s1SEqGw.PIF1q6BOJvt2xTxXO7GEDpns_ZM0tofnOyuv_it9eXM&dib_tag=se&marketplace ID=ATVPDKIKX0DER&qid=1754902091&s=merchant-items&sr=1-1&th=1.

## THE 'D611 PATENT

41.     On January 7, 2025, the USTPO duly and legally issued the 'D611 Patent, entitled "Meat Grinder," from Application No. 29/895,016 ("the '016 Application"), filed on June 15, 2023.

42.     The 'D611 Patent is presumed valid under 35 U.S.C. § 282.

43.     The 'D611 Patent claims patent-eligible subject matter.

44.    The claim of the 'D611 Patent is enforceable.

45.    Plaintiff is the exclusive owner of the 'D611 Patent and has the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the 'D611 Patent.

46.    Defendants are not licensed to the 'D611 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the 'D611 Patent.

47.    The claim of the 'D611 Patent is directed to a meat grinder. The Accused Products infringe the claim of the 'D611 Patent, as set forth in the section below and in the claim charts attached as Exhibit C. Representative Figures 7 and 8 of the 'D611 Patent are shown below.



FIG. 7



FIG. 8

## INFRINGEMENT OF THE 'D611 PATENT

48.     Defendants have purposely advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported and intend to continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Accused Products to directly compete with Plaintiff that violate Plaintiff's rights in the 'D611 Patent. Defendants sell and have sold the Accused Products on the Amazon Retail Platform using the Accused Webstores. Defendants' infringement is causing irreparable harm to Plaintiff, thereby forcing Plaintiff to bring this lawsuit to protect her intellectual property.

49.     Defendants have infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, the claim of the 'D611 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States and/or importing into the United States, meat grinders, which infringe the claim of the 'D611 Patent. On information and belief, Defendants continue to make, use, offer to sell, sell, and/or import the Accused Products. Accused Products include at least meat grinders that are covered by the claim of the 'D611Patent, either literally and/or the doctrine of equivalents.

50.     Exhibit C (a portion of which is reproduced below) includes preliminary claim charts that demonstrates how Defendants' Accused Products infringe the claim 'D611 Patent. Plaintiff submits Exhibit C as examples of the ornamental features of Defendants' Accused Product that include similar claimed components. Plaintiff reserves the right to modify Exhibit C as part of Plaintiff's infringement contentions.



51.     The Accused Products are infringing devices and thus directly infringe 'D611 Patent claim.

52.     Defendants do not have a license or authority to import, make, use, or sell goods covered by the 'D611 Patent.

53.     On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations.

54.     Defendants continue to infringe the claim of the 'D611 Patent.

55.     Plaintiff has marked her company's Plaintiff's Covered Products with notices of the 'D611 Patent.

56.     As a result of Defendants' infringement of the 'D611 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined.

57.     Defendants, without authorization or license from Plaintiff, continue to infringe the claim of the 'D611 Patent in connection with the advertisement, offer for sale, and sale of the Accused Products, through, *inter alia,* their Accused Webstores. Each Accused Webstore offers shipping to the United States, including Virginia, and, on information and belief, each Defendant has sold Accused Products into the United States, including Virginia. On information and belief, the Defendants are continuing to offer to sell and sell Accused Products at least via the Amazon Retail Platform.

58.     On information and belief, the Defendants have been willfully infringing the 'D611 Patent since at least as early as they became aware of the 'D611 Patent. On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations. Instead, Defendants have intentionally continued their willful infringement.

59.     Many sellers on the Amazon Retail Platform go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate their webstores. For example, on information and belief, sellers of counterfeit products regularly create

new webstores on the Amazon Retail Platform using fictious names and addresses. Such registration patterns are one of many common tactics used by sellers of counterfeit products to conceal their identities and the full scope and interworking of their operations and to prevent their webstores from being disabled.

60.     On information and belief, Defendants will continue to register or acquire additional webstore listings for the purpose of selling Accused Products that infringe the 'D611 Patent unless preliminarily and permanently enjoined.

61.     Plaintiff has no adequate remedy at law for infringement of the 'D611 Patent.

## THE 'D289 PATENT

62.     On June 24, 2025, the USPTO duly and legally issued the 'D289 Patent, entitled "Meat Grinder" from Application No. 29/952,669 ("the '669 Application"), filed on July 17, 2024.

63.     The '669 Application is a continuation-in-part to the '016 Application.

64.     The claim of the 'D289 Patent is entitled to the priority date of the '016 Application, June 15, 2023.

65.     The 'D289 Patent is presumed valid under 35 U.S.C. § 282.

66.     The 'D289 Patent claims patent-eligible subject matter.

67.     The claim of the 'D289 Patent is enforceable.

68.     Plaintiff is the exclusive owner of the 'D289 Patent and has the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the 'D289 Patent.

69.     Defendants are not licensed to the 'D289 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the 'D289 Patent.

70. The claim of the 'D289 Patent is directed to a meat grinder. The Accused Products infringe the claim of the 'D289 Patent, as set forth in the section below and in the claim charts attached as Exhibit D. Representative Figures 1 and 7 of the 'D289 Patent are shown below.



FIG. 1



FIG. 7

## INFRINGEMENT OF THE 'D289 PATENT

71.     Defendants have purposely advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported and intend to continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Accused Products to directly compete with Plaintiff that violate Plaintiff's rights in the 'D289 Patent. Defendants sell and have sold the Accused Products on the Amazon Retail Platform using the Accused Webstores. Defendants' infringement is causing irreparable harm to Plaintiff, thereby forcing Plaintiff to bring this lawsuit to protect her intellectual property.

72.    Defendants have infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, the claim of the 'D289 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States and/or importing into the United States, meat grinders, which infringe the claim of the 'D289 Patent. On information and belief, Defendants continue to make, use, offer to sell, sell, and/or import the Accused Products. Accused Products include at least meat grinders that are covered by the claim of the 'D289Patent, either literally and/or the doctrine of equivalents.

73.    Exhibit D (a portion of which is reproduced below) includes preliminary claim charts that demonstrates how Defendants' Accused Products infringe the claim 'D289 Patent. Plaintiff submits Exhibit C as examples of the ornamental features of Defendants' Accused Product that include similar claimed components. Plaintiff reserves the right to modify Exhibit C as part of Plaintiff's infringement contentions.



FIG. 8

74.    The Accused Products are infringing devices and thus directly infringe 'D289 Patent claim.

75.     Defendants do not have a license or authority to import, make, use, or sell goods covered by the 'D289 Patent.

76.     On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations.

77.     Defendants continue to infringe the claim of the 'D289 Patent.

78.     Plaintiff has marked her company's Plaintiff's Covered Products with notices of the 'D289 Patent.

79.     As a result of Defendants' infringement of the 'D289 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined.

80.     Defendants, without authorization or license from Plaintiff, continue to infringe the claim of the 'D289 Patent in connection with the advertisement, offer for sale, and sale of the Accused Products, through, *inter alia*, their Accused Webstores. Each Accused Webstore offers shipping to the United States, including Virginia, and, on information and belief, each Defendant has sold Accused Products into the United States, including Virginia. On information and belief, the Defendants are continuing to offer to sell and sell Accused Products at least via the Amazon Retail Platform.

81.     On information and belief, the Defendants have been willfully infringing the 'D289 Patent since at least as early as they became aware of the 'D289 Patent. On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations. Instead, Defendants have intentionally continued their willful infringement.

82.     Many sellers on the Amazon Retail Platform go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate their webstores. For example, on information and belief, sellers of counterfeit products regularly create

new webstores on the Amazon Retail Platform using fictious names and addresses. Such registration patterns are one of many common tactics used by sellers of counterfeit products to conceal their identities and the full scope and interworking of their operations and to prevent their webstores from being disabled.

83.     On information and belief, Defendants will continue to register or acquire additional webstore listings for the purpose of selling Accused Products that infringe the 'D289 Patent unless preliminarily and permanently enjoined.

84.     Plaintiff has no adequate remedy at law for infringement of the 'D289 Patent.

## COUNT ONE
## INFRINGEMENT OF THE 'D611 PATENT
### (35 U.S.C. § 271)

85.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

86.     Plaintiff is the owner of the 'D611 Patent, with all substantive rights in and to that patent, including the sold and exclusive right to prosecute this action and enforce the 'D611 Patent against infringers, and to collect damages for all relevant items.

87.     Defendants have, either alone or in concert, infringed and continue to infringe, directly and/or under the doctrine of equivalents, the claim of the 'D611 Patent by making, using, selling, and offering to sell Accused Products in the United States and/or importing into the Accused Products in violation of 35 U.S.C. § 271(a).

88.     As evidenced in the claim charts of Exhibit C, the designs of Defendants' Accused Products are substantially similar to the design of the 'D611 Patent. The designs are so similar that they are nearly identical such that an ordinary observer, given such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs that would induce

A

the purchaser to purchase the Accused Products believing Defendants' Accused Products to be substantially the same as the design protected and claimed in the 'D611 Patent.

89.     As a result of Defendants' infringement of the 'D611 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

90.     On information and belief, Defendants will continue to register or acquire webstore listings for the purpose of selling Accused Products that infringe the 'D611 Patent unless preliminarily and permanently enjoined.

91.     Defendants have infringed the 'D611 Patent through the above-listed acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

92.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

93.     Plaintiff is entitled to relief under 35 U.S.C. § 289.

**COUNT TWO**
**INFRINGEMENT OF THE 'D289 PATENT**
**(35 U.S.C. § 271)**

94.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

95.     Plaintiff is the owner of the 'D289 Patent, with all substantive rights in and to that patent, including the sold and exclusive right to prosecute this action and enforce the 'D289 Patent against infringers, and to collect damages for all relevant items.

96.     Defendants have, either alone or in concert, infringed and continue to infringe, directly and/or under the doctrine of equivalents, the claim of the 'D289 Patent by making, using,

selling, and offering to sell Accused Products in the United States and/or importing into the Accused Products in violation of 35 U.S.C. § 271(a).

97.     As evidenced in the claim charts of Exhibit C, the designs of Defendants' Accused Products are substantially similar to the design of the 'D289 Patent. The designs are so similar that they are nearly identical such that an ordinary observer, given such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs that would induce the purchaser to purchase the Accused Products believing Defendants' Accused Products to be substantially the same as the design protected and claimed in the 'D289 Patent.

98.     As a result of Defendants' infringement of the 'D289 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

99.     On information and belief, Defendants will continue to register or acquire webstore listings for the purpose of selling Accused Products that infringe the 'D289 Patent unless preliminarily and permanently enjoined.

100.     Defendants have infringed the 'D289 Patent through the above-listed acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

101.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

102.     Plaintiff is entitled to relief under 35 U.S.C. § 289.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment against Defendants—and against each of its subsidiaries, successors, parents, affiliates, officers, directors,

agents, servants, employees, and all persons in active concert or participation with it—granting the following relief:

A.      An award of damages against Defendants to Plaintiff adequate to compensate Plaintiff for the infringement, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284;

B.      An award of Defendants' total profit as provided by 35 U.S.C. § 289, but not less than $250;

C.      An award of prejudgment interest from the date infringement began and post-judgment interest;

D.      A finding that this case is exceptional and an award for attorneys' fees to Plaintiff under 35 U.S.C. § 285;

E.      An award of costs to Plaintiff;

F.      A judgment declaring that the Defendants willfully infringed and for enhancement of damages in accordance with 35 U.S.C. § 284;

G.      That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.      making, using, selling, or offering to sell in the United States or importing into the United States Accused Products;

      ii.     committing any acts calculated to cause consumers to believe that the Accused Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

  iii.  further infringing the Plaintiffs rights in the Asserted Patents;

  iv.  shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff, to be sold or offered for sale, and that bear the designs of the Asserted Patents or any reproductions, counterfeit copies, or colorable imitations thereof;

  v.  using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Accused Webstores, listings, or any other domain name that are used to sell, or is the means by which Defendants could continue to sell, Accused Products infringing the Asserted Patents; and

  G.  For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

  Plaintiff hereby demands trial by jury as to all claims in this Verified Complaint.

Dated: September 2, 2025      Respectfully submitted,

By:  */s/ Brian M. Koide*
    Brian M. Koide (VSB No. 46329)
    bkoide@mwzb.com
    MILLEN, WHITE, ZELANO & BRANIGAN, P.C.
    2200 Clarendon Blvd., Suite 1400
    Arlington, VA 22201
    Tel: 703-243-6333
    Fax: 703-243-6410
    Attorneys for Plaintiff Xu'e Chen

## VERIFICATION

I, Xu'e Chen, declare as follows:

1.      I am the named Plaintiff in the Verified Complaint. I make this declaration based on my personal knowledge. I am over the age of 18. I am a citizen of the Peoples Republic of China, and reside in China.

2.      Except where allegations are made on information and belief, I have personal knowledge of the factual allegations in the Verified Complaint.

3.      I declare under penalty of perjury under the laws of the United States of America that the factual allegations in the Verified Complaint are true and correct.

Executed on September 2, 2025

*Xu'e Chen*
Xu'e Chen